IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MEYLAN MONTALVO GOMEZ<br>YARAI FUENTES QUINONES<br>NAUDI REYES FERNANDEZ<br>YOSAN PONS SOSA<br>LAZARO SERRANO DIAZ,<br><br>Defendant. | Case No.:  1:17-CR-71<br>(JUDGE KEELEY) |

## REPORT AND RECOMMENDATION

This matter comes before the Court on Defendant Yarai Fuentes Quinones' motion to suppress physical evidence filed on March 19, 2018. (ECF No. 108). The United States of America (hereinafter "Government") filed a response in opposition to the motion on March 22, 2018.  (ECF No. 114).  On March 26, 2018, the undersigned held a hearing on the motion.  Defendants Meylan Montalvo Gomez, Yarai Fuentes Quinones, Naudi Reyes Fernandez, Yosan Pons Sosa, and Lazaro Serrano Diaz, appeared in person and by their counsel, Thomas G. Dyer, L. Richard Walker, David W. Frame, Brandon S. Flower, and Michael J. Sharley, respectively.  The Government appeared by Assistant United States Attorney, Jarod Douglas.  Johnny Benningfield, a certified court interpreter, also appeared.

During the hearing, the Government presented the testimony of West Virginia State Police Corporal David W. Simmons, Cabell County Circuit Court Judge Gregory L. Howard, and West Virginia State Police Trooper Austin Farmer.  Defendants Meylan Montalvo Gomez and Yosan Pons Sosa also testified.  Additionally, the undersigned admitted Government Exhibits 1-4 (a copy of the affidavit and complaint for the search

warrant at issue; a copy of the signed search warrant and list of seized property, an email from Cpl. Simmons to Trooper Farmer and unsigned copy of the affidavit, complaint for search warrant and search warrant; and a copy of the signed search warrant and list of seized property).

## I.  INTRODUCTION

### A.  Relevant Background

Defendants were indicted by a grand jury attending the United States District Court for the Northern District of West Virginia on December 5, 2017, charging Defendants with access device fraud offenses. After initial appearances and arraignments, Defendants Montalvo Gomez, Reyes Fernandez and Serrano Diaz were detained, while Defendants Fuentes Quinones and Pons Sosa were released on bond subject to certain conditions of release. Fuentes Quinones now moves the Court to suppress the physical evidence seized during the execution of an October 23, 2017, search warrant of room 202 at the Holiday Inn Hotel in Huntington, West Virginia, the hotel where Defendants were residing as guests.

### B.  Pending Motions

In addition to Defendant Fuentes Quinones' pending motion to suppress (ECF NO. 108) are four motions to join Defendant's motion. (ECF Nos. 109, 110, 111, 112). During the suppression hearing the Government did not dispute the Defendants' request to join.  Accordingly, the undersigned **GRANTED** Defendants' motions to the extent of solely joining Defendant Fuentes Quinones' motion.

### C. Recommendation

The Court is not persuaded by Defendant Fuentes Quinones' motion and recommends that it be **DENIED**.

## II.     STATEMENT OF FACTS

Finding the testimony of the witnesses credible, the undersigned deduced the following facts after considering the parties' motions and responses and all the evidence and testimony that was provided to the Court during the suppression hearing.

In or about October 2017, an investigation into unauthorized credit/debit card transactions was being conducted by the West Virginia State Police (hereinafter "WVSP"), United States Attorney's Office and the Monongalia County Sherriff's Department. On October 19th and 20th of 2017, the WVSP received complaints from two individuals regarding unauthorized use of their debit cards. After reviewing video surveillance from the establishments where these unauthorized transactions took place, a Nissan Versa bearing a Maryland license plate and multiple suspects were seen. The vehicle was registered to All Car Leasing, Inc.

On October 23, 2018, Cpl. Simmons, a WVSP officer involved in the investigation received a federal grand jury subpoena return from All Car Leasing, providing him with records on the Nissan Versa. The rental agreement showed Defendant Montalvo Gomez had rented the vehicle on October 18, 2017, from the Baltimore-Washington International Airport. A license plate reader inquiry revealed that the Nissan Versa passed mile marker 150 on Interstate-79 South on October 19, 2017, at 5:27 p.m. GPS coordinates revealed that on October 23, 2017, the Nissan Versa was located at 800 3rd Avenue, Huntington, West Virginia, later determined to be a parking area for a Holiday Inn Hotel. Cpl. Simmons relayed this information to WVSP Sgt. Barry Wellman and Cpl. Tippett of the Huntington Detachment, who later confirmed that the Nissan Versa and a black Ford Expedition, an "additional suspect vehicle," was located in the

parking area and associated with Room 202 of the Holiday Inn. Cpl. Simmons also asked the officers to attempt to identify the occupants.

After locating Room 202, Sgt. Wellman, Cpl. Tippett, and Trooper First Class R.L. Walton knocked on the door. Defendant Montalvo Gomez looked through the peep hole. After not seeing anyone and believing it may be housekeeping, she opened the door whereupon the officers pushed the door wide open and entered the room with flashlights and guns drawn. The officers turned on the room lights and directed Defendant Montalvo Gomez to show them her ID. When she reached into her purse to retrieve her ID, one of the officers took the purse from her and started removing items from it. The officers then escorted Defendants Montalvo Gomez and Fuentes Quinones out of the room. Defendant Pons Sosa witnessed the officers open bags and go through their belongings. Thereafter, the officers started to escort out of the room, Defendants Pons Sosa and Reyes Fernandez, who had started to record the incident on his phone. The officers immediately took the phone, and when asked whether they had a search warrant, they did not respond.

At no point in time did any of the occupants give the officers permission to enter or search of the room, and prior to their entry, all cash, credit cards, and computers, were stored away and unable to be seen. The Government provided no witness who could confirm or deny whether the officers entered the hotel room upon consent of any of the occupants.

While Sgt. Wellman, Cpl. Tippett and Trooper Walton were located at the hotel, Cpl. Simmons began drafting a "Search Warrant" and "Affidavit and Complaint for Search Warrant." Upon completion, he emailed those documents to WVSP Trooper Farmer in the Huntington Detachment. Trooper Farmer printed the documents,

4

skimmed them, and presented them to Judge Howard at the Cabel County Courthouse. Trooper Farmer did not know the contents of the documents, did not recall speaking with Cpl. Simmons about the contents of the documents, did not give oral testimony in support of the documents and did not recall conversing with Judge Howard about the contents of the documents. He testified that he took Cpl. Simmons at his word and swore that everything in the documents were true to the best of his knowledge. Thereafter, Trooper Farmer executed the search warrant. To date, a signed copy of the affidavit has not been located.

Judge Howard understood that Trooper Farmer had not authored the affidavit and search warrant, but that he was swearing to the veracity of the affidavit on Cpl. Simmons' behalf.

### III. CONTENTION OF THE PARTIES

In support of her motion to suppress the physical evidence seized from her hotel room on October 23, 2017, Fuentes Quinones asserts three arguments. First Fuentes Quinones contends that none of the occupants consented to the WVSP officers' entry into the hotel room and as such, consent could not have been implied. (ECF No. 108 at 8-9). Next, Fuentes Quinones contends that there were no exigent circumstances to justify the warrantless entry and search of the hotel room. Id. at 9. Lastly, she asserts that the search warrant "does not salvage the initial illegal search and seizure," arguing that the search warrant is facially deficient as the author of the affidavit did not present the affidavit to the judicial officer or sign it, but was rather presented and sworn to by another officer. Fuentes Quinones further asserts that the search warrant would have lacked a basis for probable cause absent the information gleaned from the officers' "unlawful predicate search." Id. at 11-12.

Conversely, the Government contends the sole dispositive issue before the court is the validity of the search warrant and asserts that it is valid pursuant to the Fourth Amendment. More specifically, the Government asserts that the search warrant was supported by "Oath or affirmation," and was issued upon probable cause. (ECF No. 114 at 9-10). Furthermore, while not conceding the officers' initial entry into the hotel room was unlawful, the Government contends the search warrant is valid absent paragraph 18, arguing that the remainder of the affidavit supports a finding of probable cause. Id. at 11. Lastly, the Government asserts the initial entry into the hotel room was proper, arguing the WVSP had reason to believe that a confirmed-fugitive and associate of Defendant Montalvo Gomez was present in the hotel room and believed to be "the second female depicted on the surveillance video of the fraudulent transactions." (ECF No. 114 at 11).

As discussed below, because the Court finds the executed search warrant is valid, the Court concludes it is not necessary to determine whether the officer's initial warrantless entry into the hotel room was unlawful.

## IV.    DISCUSSION

The prohibition against unreasonable searches and seizures mandated by the Fourth Amendment requires that warrants "(1) be issued by a neutral and detached [judicial officer], (2) contain a particular description of the place to be searched, and the persons or things to be seized, and (3) be based upon probable cause, supported by Oath or affirmation." United States v. Clyburn, 24 F.3d 613, 617 (4thCir. 1994) (quoting U.S. Const. amend. IV (internal quotations omitted) (citation omitted). Here, there is no dispute the search warrant contained a sufficiently detailed description of the placed to be searched and was issued by a neutral judicial officer. Rather, Defendant Fuentes

Quinones contends the search warrant is invalid because Trooper Farmer presented and swore to facts in the affidavit, which was authored by Cpl. Simmons. "The Fourth Amendment does not require that the basis for probable cause be established in a written affidavit; it merely requires that the information provided [to] the issuing [judicial officer] be supported by 'Oath or affirmation.'" Clyburn, 24 F. 3d at 617 (quoting U.S. Const. amend. IV.)

Although the signed affidavit has not been found, the undersigned finds credible the testimony of Trooper Farmer and Judge Howard, indicating that the document had been signed. Moreover, the Court finds the search warrant complied with the Fourth Amendment's "Oath or affirmation" requirement. Here, Cpl Simmons drafted the search warrant and affidavit and complaint for search warrant and emailed those documents to Trooper Farmer to procure the warrant from a Cabel County Circuit Court Judge. The affidavit contains Cpl. Simmons name and details Cpl. Simmon's personal knowledge of Defendants' alleged illegal activities. Additionally, after speaking with Trooper Farmer, Judge Howard understood as a result of an ongoing investigation by officers in the northern part of the state the need for a warrant in Cabel County had arisen. He further understood that Trooper Farmer had not authored the documents but that he was presenting and swearing to their veracity on Cpl. Simmons behalf. The undersigned finds that when Trooper Farmer signed and swore to the affidavit he affirmed the statements contained in the affidavit were made by Cpl. Simmons and the personal basis of Cpl. Simmons' knowledge as laid out in the affidavit are true to the best of his knowledge and belief.

Defendant Fuentes Quinones further alleges the search warrant was invalid arguing that it would have lacked probable cause absent the information obtained from

7

the officers' "unlawful predicate search," emphasizing that paragraph 18 informed the judge that the evidence sought was definitively inside the hotel room, and arguing if that information were not included, the affidavit would have informed the judge that there was only the possibility that the evidence sought would have been in the room. The Court is not persuaded by Defendant Fuentes Quinones' arguments. "Probable cause" as described by the Supreme Court is "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). As the Fourth Circuit noted,

> The probable cause standard does not:
>
> require officials to possess an airtight case before taking action. The pieces of an investigative puzzle will often fail to neatly fit, and officers must be given leeway to draw reasonable conclusions from confusing and contradictory information, free of the apprehension that every mistaken search or seizure will present a triable issue of probable cause.

Taylor v. Farmer, 13 F.3d 117, 121-22 (4th Cir. 1993). Here, absent paragraph 18, the affidavit contains details explaining fraudulent debit card transactions, details on how Cpl. Simmons was able to identify the Nissan Versa and its connection to Defendant Montalvo Gomez and her alleged fraudulent debit card transactions, details on how the Nissan Versa and Defendant Montalvo Gomez were located at the Holiday Inn, and that the Ford Expedition, an additional suspect vehicle, was also located at the Holiday Inn. Considering the totality of the details included in the affidavit, absent paragraph 18, the Court finds the affidavit contains sufficient credible information to find probable cause for the issuance of the search warrant.

Because there was sufficient evidence for a judge to authorize the search warrant of the hotel room within which Defendants were residing, and the search

warrant complied with the constitutional "Oath or affirmation" requirement, the Court finds the search warrant was valid.

## V.     RECOMMENDATION

For the foregoing reasons, the Court recommends Defendant Fuentes Quinones' Motion to Suppress Physical Evidence(ECF No. 108) be **DENIED.**  The undersigned further recommends that Defendants Montalvo Gomez, Reyes Fernandez, Pons Sosa, and Serrano Diaz's requests for suppression of the physical evidence (ECF Nos. 109, 110, 111, 112) be **DENIED.**

Any party may file with the Clerk of the Court, on or before April 6, 2018, written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.  A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge.  Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such report and recommendation.  28 U.S.C. §636(b)(1).  United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to forward a copy of this Report and Recommendation to counsel of record.

Respectfully submitted this 30th day of March 2018.

_____
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE