```
IN THE UNITED STATES DISTRICT COURT
  FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

   v.           //        CRIMINAL NO. 1:17CR71
                                     (Judge Keeley)

**MEYLAN MONTALVO GOMEZ,**
**YARAI FUENTES QUINONES,**
**NAUDI REYES FERNANDEZ,**
**YOSAN PONS SOSA, and**
**LAZARO SERRANO DIAZ,**

        **Defendants.**

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 129] AND DENYING MOTION TO SUPPRESS [DKT. NO. 108]**

In this case, the Government alleges that the defendants conspired to commit access device fraud by clandestinely obtaining and using credit and debit card information. Much of the physical evidence of this conspiracy was seized by West Virginia law enforcement officers from a hotel room in Huntington, West Virginia. Pending is the defendants' motion to suppress that evidence, which they claim was obtained in violation of their Fourth Amendment rights. For the following reasons, the Court **DENIES** the motion (Dkt. No. 108).

## I. FACTUAL AND PROCEDURAL BACKGROUND

**A.    Procedural History**

On December 5, 2017, the grand jury returned a six-count indictment naming defendants Meylan Montalvo Gomez ("Gomez"), Yarai Fuentes Quinones ("Quinones"), Naudi Reyes Fernandez ("Fernandez"),

**USA V. GOMEZ, ET AL.**                                          **1:17CR71**

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 129] AND DENYING MOTION TO SUPPRESS [DKT. NO. 108]**

Yosan Pons Sosa ("Sosa"), and Lazaro Serrano Diaz ("Diaz") (Dkt. No. 1). Count One charges that the defendants conspired to commit access device fraud, in violation of 18 U.S.C. § 1029(b)(2). Id. at 1-7. Counts Two through Six charge each of the defendants separately with access device fraud, in violation of 18 U.S.C. §§ 1029(a)(2) and (c). Id. at 8-12. The Indictment also includes a forfeiture allegation. Id. at 13-15. The final defendant, Diaz, made his initial appearance on February 14, 2018 (Dkt. No. 90).

On March 19, 2018, Quinones moved to suppress the evidence seized from the defendants' hotel room, "including cash, computers, credit cards, money orders, identification cards, cell phones, paperwork, merchandise, and other personal property" (Dkt. No. 108 at 1). Her co-defendants moved to join the motion (Dkt. Nos. 109; 110; 111; 112). The defendants argue that officers' warrantless entry was not justified by consent or exigent circumstances, and that a subsequently obtained search warrant did not cure the illegality of the search (Dkt. No. 108 at 7-13). In its response to the motion, the Government contends that "the sole issue presented is whether the search warrant is valid" (Dkt. No. 114 at 9).

**USA V. GOMEZ, ET AL.**                                          **1:17CR71**

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 129] AND DENYING MOTION TO SUPPRESS [DKT. NO. 108]**

**B.   Factual Background**

On March 26, 2018, the Honorable Michael J. Aloi, United States Magistrate Judge, conducted a hearing on the defendants' motion to suppress (Dkt. No. 121). The Government presented testimony from West Virginia State Police Corporal David W. Simmons ("Corporal Simmons"), Cabell County Circuit Court Judge Gregory L. Howard ("Judge Howard"), and West Virginia State Police Trooper Austin Farmer ("Trooper Farmer"), while Gomez and Sosa testified on behalf of the defendants (Dkt. No. 123).

The Court has reviewed the audio recording of the suppression hearing, as well as the following exhibits: 1) the search warrant affidavit, 2) the search warrant and return, 3) an email sent to Trooper Farmer, and 4) a copy of the signed search warrant. Id. Magistrate Judge Aloi found the testimony of the witnesses credible (Dkt. No. 129 at 3), and no party has challenged his credibility finding. Therefore, the Court takes its recitation of the facts from the evidence adduced at the evidentiary hearing.

On October 19, 2017, Corporal Simmons received a complaint regarding unauthorized debit card transactions at a convenience store in Morgantown, West Virginia. The next day, he traveled to the store and viewed surveillance video from the time of the

USA V. GOMEZ, ET AL.                                              1:17CR71

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 129] AND DENYING MOTION TO SUPPRESS [DKT. NO. 108]**

transactions. The video showed two females with dark complexions and dark hair arrive in a white Nissan Versa bearing a Maryland registration plate with the first two characters "7C" and the last character "9." The pair conducted transactions at an ATM inside the store and departed in the same sedan.

The same day that Corporal Simmons reviewed footage at the convenience store, Senior Trooper P.J. Maidens ("Trooper Maidens") received another complaint regarding unauthorized debit card transactions at a grocery store and pharmacy in Morgantown, West Virginia. Surveillance video at the grocery store showed two Hispanic females making purchases with the complainant's debit card, accompanied by a Hispanic male, and departing in a white sedan. An employee at the pharmacy advised Senior Trooper Maidens that parties matching that description had made strange purchases and departed in a sedan bearing a license plate that she believed read "TCY3449."

Trooper Maidens and Corporal Simmons exchanged information from their respective investigations, and determined that both cases involved the same sedan with Maryland license plate number "7CY3449." They quickly determined that the vehicle was registered to a car rental company in Laurel, Maryland. Moreover, on October 19, the vehicle had been recorded on a license plate reader

**USA V. GOMEZ, ET AL.**  1:17CR71

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 129] AND DENYING MOTION TO SUPPRESS [DKT. NO. 108]**

traveling southbound on Interstate 79 under ten miles from the locations in question. A subpoena issued to the rental car company was returned on the morning of October 23, indicating that the vehicle had been rented to "Meylan Montalvo-Gomez" on October 18. The subpoena return further indicated that the last known location of the sedan's GPS tracking device was the parking lot of a Holiday Inn in Huntington, West Virginia. Corporal Simmons then discovered that Gomez had been arrested in September 2015 in connection with a counterfeit credit card ring in Lexington, Kentucky.

With this information in hand, Corporal Simmons contacted Sergeant Barry Wellman ("Sergeant Wellman"), who was stationed in Huntington. After relaying the details of the investigation, Corporal Simmons asked Sergeant Wellman to confirm whether he could locate the white sedan, as well as a black Ford Expedition that the Monongalia County Sheriff's Department suspected was involved in similar fraudulent conduct. Shortly thereafter, Sergeant Wellman advised Corporal Simmons that he had located the suspect vehicles at the Holiday Inn, at which time Corporal Simmons requested that he attempt to locate the suspects' hotel room and make contact.

After determining that the suspect vehicles were associated with Room 202, Sergeant Wellman and several other officers approached the room, where Gomez, Quinones, Fernandez, and Sosa

**USA V. GOMEZ, ET AL.**  1:17CR71

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 129] AND DENYING MOTION TO SUPPRESS [DKT. NO. 108]**

were sleeping. When Gomez answered the door, the officers pushed their way into Room 202 without requesting consent, pointing their handguns and flashlights at the occupants. The officers requested Gomez's identification and removed the defendants from Room 202. During this time, the defendants observed the officers begin to search their bags and luggage without consent.

After entering Room 202 and detaining the defendants, Sergeant Wellman contacted Corporal Simmons to advise him that they had located Gomez at the Holiday Inn, and that his team had found cash, credit cards, and computers in the hotel room. Upon learning that Sergeant Wellman had located the suspects, Corporal Simmons decided to finish drafting an affidavit and complaint to obtain a search warrant regarding Room 202 and the suspect vehicles. The four-page, single-space affidavit sets forth the details of the investigation in support of probable cause. As relevant to the defendants' pending motion to suppress, the final paragraph of Corporal Simmons's factual account reads as follows:

> 18. Upon being granted access to the room by Montalvo-Gomez, Troopers observed in plain view various items suspected in the ongoing Credit Card Skimming and Fraud investigation. Trooper identified all occupants of the room as Meylan Montalvo-Gomez, Yari Fuentes Quinones, Naudi Reyes Fernandez, and Yosan Pons Sosa.

(Dkt. No. 123-1 at 4).

**USA V. GOMEZ, ET AL.                                    1:17CR71**

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 129] AND DENYING MOTION TO SUPPRESS [DKT. NO. 108]**

Although he drafted the application in his own name, after consulting with an Assistant United States Attorney, Corporal Simmons decided that the search warrant should be obtained from a Circuit Judge in Cabell County, where Huntington is located, rather than Monongalia County. Corporal Simmons emailed the completed search warrant packet to Trooper Farmer, whom Sergeant Wellman had asked to come in early for his 3:00 P.M. shift. When he arrived at the Huntington detachment, at Sergeant Wellman's direction, Trooper Farmer printed out the search warrant application without removing Corporal Simmons's name or asking him any questions about the investigation, skimmed the application's contents, and departed for the Cabell County Courthouse.

In between hearings at the courthouse, Trooper Farmer approached Judge Howard to present the search warrant application. Judge Howard placed Trooper Farmer under oath by asking, "Do you solemnly swear or affirm that the evidence or testimony that you are about to give me is true?" Trooper Farmer and Judge Howard each signed the affidavit and complaint for search warrant, as well as the search warrant.[1] Although the two discussed the fact that

---

[1] Although it offered the executed search warrant into evidence, the Government has been unable to locate the executed affidavit and complaint for search warrant. Nonetheless, both Judge Howard and Trooper Farmer testified that they signed the affidavit.

**USA V. GOMEZ, ET AL.** 1:17CR71

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 129] AND DENYING MOTION TO SUPPRESS [DKT. NO. 108]**

Corporal Simmons's name appeared on all of the documents, Judge Howard was satisfied that Trooper Farmer was swearing to his knowledge that the facts had been gathered and documented by another law enforcement officer. Judge Howard testified that he issued the search warrant based on the contents of the search warrant application, not anything that Trooper Farmer may have said. In fact, by Trooper Farmer's own account, he did not have any personal knowledge of the contents of the affidavit and had limited knowledge of the investigation as a whole at that time.

After receiving it from Judge Howard, Trooper Farmer took the search warrant to the Holiday Inn and assisted in its execution. The West Virginia State Police recovered the following items, among others, from Room 202 and the suspect vehicles: United States currency, money orders, bank cards, credit cards, gift cards, laptops, cell phones, and a credit card reader. The defendants seek to suppress all these items, arguing that they are the fruit of an unconstitutional search.

**C. Report and Recommendation**

On March 30, 2018, Magistrate Judge Aloi recommended that the Court deny the defendants' motion to suppress (Dkt. No. 129). He concluded "that when Trooper Farm signed and swore to the affidavit

8

**USA V. GOMEZ, ET AL.** 1:17CR71

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 129] AND DENYING MOTION TO SUPPRESS [DKT. NO. 108]**

he affirmed the statements contained in the affidavit were made by Cpl. Simmons and the personal basis of Cpl. Simmons' knowledge as laid out in the affidavit." Id. at 7. In addition, he reasoned that probable cause supported the issuance of the search warrant, even absent the information contained in Paragraph 18 of the search warrant affidavit. Id. at 8. Because Magistrate Judge Aloi found that the search warrant was valid, he did not address the initial warrantless entry in the defendants' hotel room. Id. at 6.

**D.  Defendants' Objections**

Quinones filed timely objections to the R&R on April 6, 2018 (Dkt. No. 134), which each of the other defendants has moved to join (Dkt. Nos. 135; 136; 137; 138). Quinones raises two specific objections to the R&R. In particular, she renews her arguments that law enforcement's initial entry into the hotel room invalidates the search, and that the search warrant was not supported by an oath or affirmation (Dkt. No. 134 at 2-6). Notably, no defendant objected to the R&R's conclusion that the search warrant was supported by probable cause, even if Paragraph 18 is excised from the factual averments.

**USA V. GOMEZ, ET AL.**                                   1:17CR71

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[DKT. NO. 129] AND DENYING MOTION TO SUPPRESS [DKT. NO. 108]**

## II. STANDARD OF REVIEW

When considering a magistrate judge's R&R made pursuant to 28 U.S.C. § 636(b)(1)(C), the Court must review de novo those portions to which objection is timely made. Otherwise, "the Court may adopt, without explanation, any of the magistrate judge's recommendations to which the [party] does not object." Dellacirprete v. Gutierrez, 479 F. Supp. 2d 600, 603-04 (N.D.W.Va. 2007) (citing Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983)). Courts will uphold those portions of a recommendation to which no objection has been made unless they are "clearly erroneous." See Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005).

## III. DISCUSSION

### A. The Initial Entry Does Not Invalidate the Subsequent Seizure Pursuant to the Search Warrant.

The defendants contend that all evidence seized from their hotel room "should be suppressed because law enforcement illegally entered, seized and searched the room . . . without a warrant and without any exceptions to the Fourth Amendment's warrant requirement" (Dkt. No. 134 at 2). The Government argues that, even if the initial entry into the hotel room was unlawful, the evidence obtained as a result of the search should not be excluded under the independent source doctrine (Dkt. No. 139 at 9).

10

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 129] AND DENYING MOTION TO SUPPRESS [DKT. NO. 108]**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State." Sims v. Labowitz, 877 F.3d 171, 177 (4th Cir. 2017) (quoting Schmerber v. California, 384 U.S. 757, 767 (1966)). To achieve this goal, "[t]he exclusionary rule generally renders inadmissible evidence recovered during an unlawful search." United States v. Hill, 776 F.3d 243, 250 (4th Cir. 2015) (quoting United States v. Mowatt, 513 F.3d 395, 403 (4th Cir. 2008)).

"[T]he independent source doctrine," however "provides for the admissibility of evidence if it would have been obtained even absent an illegal search." United States v. Bullard, 645 F.3d 237, 244 (4th Cir. 2011). "This doctrine applies when a 'search pursuant to [a] warrant was in fact a genuinely independent source of the information and tangible evidence' that would otherwise be subject to exclusion because they were found during an earlier unlawful search." Hill, 776 F.3d at 251 (quoting Murray v. United States, 487 U.S. 533, 542 (1988)). "To find the search with a warrant 'genuinely independent,' the unlawful search must not have affected (1) the officer's 'decision to seek the warrant' or (2) the

**USA V. GOMEZ, ET AL.**  1:17CR71

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 129] AND DENYING MOTION TO SUPPRESS [DKT. NO. 108]**

magistrate judge's 'decision to issue [it].'" Id. (quoting Murray, 487 U.S. at 542).

In Murray, after observing narcotic-laden vehicles exit a warehouse in South Boston, several agents forced entry into the warehouse and "observed in plain view numerous burlap-wrapped bales that were later found to contain marijuana." 487 U.S. at 535. The agents then left the warehouse under surveillance and applied for a search warrant without mentioning their prior entry or relying on what they had seen inside. Id. at 535-36. The Supreme Court reasoned that, although "[k]nowledge that the marijuana was in the warehouse was assuredly acquired at the time of the unlawful entry . . . it was also acquired at the time of entry pursuant to the warrant." It concluded "if that later acquisition was not the result of the earlier entry there is no reason why the independent source doctrine should not apply." Indeed, to apply the exclusionary rule would place society in a worse position than had the violation not occurred. Id. at 541.

In United States v. Bullard, officers received valid consent to enter a hotel room and remove unregistered guests. Upon entry, "the smell of narcotics was immediately apparent and drug paraphernalia as well as what appeared to be cocaine residue were in plain view." 645 F.3d at 243. The officers permissibly seized

**USA V. GOMEZ, ET AL.**                                        **1:17CR71**

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 129] AND DENYING MOTION TO SUPPRESS [DKT. NO. 108]**

this evidence pursuant to the plain view doctrine, but continued to exceed the scope of a valid protective sweep by searching cabinets and closed luggage within the room, uncovering a child's lunchbox containing 300 grams of cocaine. Id. at 241, 244. Without mentioning the cocaine in their application, the officers obtained a search warrant that resulted in the seizure of drug paraphernalia, the 300 grams of cocaine, and an additional $20,000 to $25,000 in United States currency. Id. at 241.

The Fourth Circuit determined that "the independent source doctrine save[d] any overreaching during the officers' initial search of [the] luggage from tainting the evidence later obtained pursuant to a valid search warrant." Id. at 245. First, the officers had intended to seek a search warrant prior to discovering the cocaine. They had evidence of suspicious activity around the room and had seen evidence of drug activity in plain view upon entry. Critically, one of the officers "testified that at this point, he told the officers accompanying him that he was planning to 'go ahead and apply for a search warrant' as soon as they finished a protective sweep." Id. at 244-45. Second, the "officers did not include in their warrant application any of the information that they discovered during their initial search." Id. at 244; see also United States v. Handberry, 372 F. App'x 383, 387-88 (4th Cir.

**USA V. GOMEZ, ET AL.**                                          **1:17CR71**

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 129] AND DENYING MOTION TO SUPPRESS [DKT. NO. 108]**

2010) (unpublished decision) (analyzing whether probable cause supported the issuance of a search warrant by excising unlawfully obtained information).

    Here, even if the officers' initial entry and search violated the Fourth Amendment, the independent source doctrine is easily satisfied under the facts of this case. First, the record reflects that evidence discovered during the initial entry did not affect the decision to seek the search warrant. During the course of his investigation, Corporal Simmons had been recording the occurrences in what eventually became a draft of the search warrant affidavit. Although Corporal Simmons did not finish drafting the affidavit or decide to complete the search warrant application before learning that there were cash, credit cards, and computers in the defendants' room, he testified that the basis of his decision to seek a warrant was the confirmed discovery of the defendants' vehicles and their presence in Room 202. It is reasonable to infer that Corporal Simmons would have sought a warrant to search these locations, which he suspected would contain evidence of the crimes he had been investigating for several days, even without confirmation that the room in fact contained suspicious items.

    Second, the initial entry into the hotel room did not affect Judge Howard's decision to issue the search warrant. Although

USA V. GOMEZ, ET AL.                                              1:17CR71

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 129] AND DENYING MOTION TO SUPPRESS [DKT. NO. 108]**

Corporal Simmons included in his affidavit certain limited information obtained during the initial entry, the affidavit set forth a thorough summary of the investigation leading up to the observations in Room 202. Critically, the defendants no longer contest that the search warrant affidavit established probable cause even in the absence of Paragraph 18. See United States v. Hernandez, No. 3:14-CR-111-FDW-DCK, 2015 WL 13227857, at *5 (W.D.N.C. Dec. 11, 2015) (quoting United States v. Walton, 56 F.3d 551, 554 (4th Cir. 1995) ("Such information has not affected the magistrate judge's decision to issue the warrant if, setting to one side illegally-obtained information, the 'untainted portion of the affidavit set forth probable cause.'")).

Therefore, because Corporal Simmons intended to obtain a warrant prior to learning the general contents of the hotel room, and the search warrant affidavit established probable cause without that information, the independent source doctrine precludes the exclusion of evidence that may have been obtained during an initial, unlawful search of the hotel room.

**B.  The Search Warrant Was Issued with the Support of an Appropriate Oath or Affirmation.**

The defendants also argue that, given the unique facts of this case, the search warrant was not supported by a constitutionally

15

**USA V. GOMEZ, ET AL.**                                                   **1:17CR71**

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 129] AND DENYING MOTION TO SUPPRESS [DKT. NO. 108]**

sufficient "oath or affirmation" (Dkt. No. 134 at 4-6). They contend that "Trooper Farmer's oath was an oath in name only" because he "knew little about the case and had no personal knowledge of the facts." The oath thus "did little to ensure the truth of the matters asserted in the affidavit and complaint." Id. at 5-6. The Government contends that the Constitution is satisfied because Trooper Farmer swore to the veracity of facts provided to him by another law enforcement officer (Dkt. No. 139 at 11-13).

"The Warrant Clause of the Fourth Amendment requires that warrants (1) be issued by a neutral and detached magistrate, (2) contain a 'particular[] descri[ption of] the place to be searched, and the persons or things to be seized,' and (3) be based 'upon probable cause, supported by Oath or affirmation.'" United States v. Clyburn, 24 F.3d 613, 617 (4th Cir. 1994) (alteration in original) (quoting U.S. Const. amend. IV). "The Warrant Clause does not require a signed and sworn affidavit, but only that probable cause be supported by oath or affirmation." United States v. Henry, 931 F. Supp. 452 (S.D.W.Va. 1996) (citing Clyburn, 24 F.3d at 617); see also United States v. Loy, 569 F. Supp. 2d 601, 606 (N.D.W.Va. 2008) (finding sufficient that a detective "affirmed under oath . . . that the information presented in the application for the search warrant was true based upon his knowledge and belief").

**USA V. GOMEZ, ET AL.**                                    1:17CR71

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[DKT. NO. 129] AND DENYING MOTION TO SUPPRESS [DKT. NO. 108]**

The Eighth Circuit rejected a similar challenge in <u>United States v. Jones</u>, 471 F.3d 868 (8th Cir. 2006). There, "Kansas City, Missouri Police Department ('KCPD') Detective Robert Delameter obtained a warrant" to search a particular house. He "presented under oath a supporting affidavit prepared by an undercover KCPD detective." <u>Id.</u> at 870. The defendant later argued that the affidavit was defective because "the affiant, KCPD Detective Delameter, had no personal knowledge of, and did not attempt to verify, the facts contained in the affidavit." <u>Id.</u> at 873. Instead, as was common practice in the KCPD, the "undercover detective collected the information, prepared the affidavit and passed it to Detective Delameter for presentation to a judge." <u>Id.</u> at 873-74.

The Eighth Circuit concluded that "nothing" about such an arrangement even "suggest[ed] a faulty oath or defective warrant." Rather, "where a detective other than the affiant is the source of the information in the affidavit, the other detective is the functional equivalent of a reliable informant." <u>Id.</u> at 874 (citing <u>United States v. Hyten</u>, 5 F.3d 1154 (8th Cir. 1993)); <u>see also</u> <u>United States v. Hodge</u>, 354 F.3d 305, 309 (4th Cir. 2004) (acknowledging that probable cause may be "based in part on an informant's hearsay"). The court thus reasoned that the defendant's "argument that the Fourth Amendment was violated because there was

17

**USA V. GOMEZ, ET AL.                                         1:17CR71**

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 129] AND DENYING MOTION TO SUPPRESS [DKT. NO. 108]**

no oath by the affiant totally ignore[d] [Detective Delameter's] oath and adoption of the affidavit." Jones, 471 F.3d at 874 (second alteration in original).

Trooper Farmer's oath was likewise sufficient to satisfy the requirements of the Fourth Amendment, despite the fact that he had no personal knowledge of the investigation and did not attempt to verify the contents of the affidavit. Corporal Simmons provided Trooper Farmer with a search warrant application that detailed the results of his investigation. Sergeant Wellman, who had been in contact with Corporal Simmons and assisting with his investigation, directed Trooper Farmer to deliver the application to the circuit court and obtain a search warrant. The parties do not dispute that Judge Howard placed Trooper Farmer under oath before Trooper Farmer signed the affidavit and complaint. Judge Howard then reviewed the application and issued the search warrant at issue.

"When [Trooper Farmer] swore to and signed the affidavit, he essentially stated under oath that [Corporal Simmons] was the person who the affidavit said he was and that [Corporal Simmons] had made the statement contained in the affidavit." Hyten, 5 F.3d at 1156. "Not only is the personal basis of [Corporal Simmons's] knowledge extensively set out in the affidavit, but so is [his] position in the community and, inferentially, his reputation for

**USA V. GOMEZ, ET AL.**                                             **1:17CR71**

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 129] AND DENYING MOTION TO SUPPRESS [DKT. NO. 108]**

veracity." Id. Moreover, even if it would have been prudent for Trooper Farmer to place his name on the affidavit and complaint, his failure to do so "was an error of technical rather than constitutional magnitude." Id. Therefore, the defendants' challenge to the sufficiency of Trooper Farmer's oath, and in turn the validity of the search warrant, is without merit.

## IV. CONCLUSION

For the reasons discussed, the Court:

1) **GRANTS** the defendants' various motions to join (Dkt. Nos. 109; 110; 111; 112; 135; 136; 137; 138);

2) **ADOPTS** the R&R (Dkt. No. 129); and

3) **DENIES** the motion to suppress (Dkt. No. 108).

It is so **ORDERED**.

The Court **DIRECTS** the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record and all appropriate agencies.

DATED: May 29, 2018.

/s/ Irene M. Keeley  
IRENE M. KEELEY  
UNITED STATES DISTRICT JUDGE