```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**UNITED STATES OF AMERICA,**

          Plaintiff,

  v.                                     CRIMINAL NO.  1:17CR71-1
                                                  (Judge Keeley)

**MEYLAN MONTALVO GOMEZ,**

          Defendant.

**MEMORANDUM OPINION AND ORDER DENYING
MOTIONS FOR COMPASSIONATE RELEASE [DKT. NOS. 344, 345]**

Pending before the Court are motions for compassionate release, filed pursuant to 18 U.S.C. § 3582(c)(1)(A), by the defendant, Meylan Montalvo Gomez ("Gomez") (Dkt. Nos. 344, 345). For the reasons that follow, the Court **DENIES** her motions.

### I. BACKGROUND

On December 5, 2017, a grand jury charged Gomez with one count of conspiracy to commit access device fraud, in violation of 18 U.S.C. § 1029(b)(2), and one count of access device fraud - use of unauthorized access device, in violation of 18 U.S.C. §§ 1029(a)(2) and (c) (Dkt. No. 1). Gomez pleaded guilty to both counts, and the Court accepted her guilty plea on June 19, 2018 (Dkt. No. 198). The Court sentenced Gomez to fifty-seven (57) months of incarceration, to be followed by three (3) years of supervised release (Dkt. No. 239). After Gomez appealed, the United States Court of Appeals for the Fourth Circuit affirmed her conviction and sentence in July 2019 (Dkt. No. 312). Gomez is incarcerated at FCI Aliceville in

**USA V. GOMEZ**                                                   **1:17CR71-1**

**MEMORANDUM OPINION AND ORDER DENYING
MOTIONS FOR COMPASSIONATE RELEASE [DKT. NOS. 344, 345]**

Aliceville, Alabama, and her projected release date is December 5, 2021.

On June 2, 2020, Gomez, pro se, sought compassionate release, and the Court appointed the Office of the Federal Public Defender for the Northern District of West Virginia to represent her (Dkt. Nos. 329, 330). On July 13, 2020, the Court directed her counsel to file a memorandum no later than July 24, 2020, and granted two extensions of time so Gomez could exhaust her administrative remedies (Dkt. Nos. 334, 337, 342). On October 16, 2020, Gomez filed a motion for compassionate release and, three days later, filed an identical second motion with three exhibits attached (Dkt. Nos. 344, 345). The Government responded on October 26, 2020, following which Gomez did not reply (Dkt. No. 351).

## II. DISCUSSION

### A.   Applicable Law

Once imposed, a Court may not modify a term of imprisonment except in specific, limited circumstances. See United States v. McCoy, 981 F.3d 271 (4th Cir. 2020). One of these circumstances, compassionate release, permits courts to "reduce the term of imprisonment after a "three-step inquiry": (1) a defendant exhausts all administrative remedies; (2) an extraordinary and compelling reason for a sentence reduction exists; and (3) a sentence

USA V. GOMEZ                                                  1:17CR71-1

**MEMORANDUM OPINION AND ORDER DENYING
MOTIONS FOR COMPASSIONATE RELEASE [DKT. NOS. 344, 345]**

reduction is consistent with all relevant sentencing factors listed in 18 U.S.C. § 3553(a). United States v. Jones, 980 F.3d 1098, 1101 (6th Cir. 2020).

18 U.S.C. § 3582 does not define the term "extraordinary and compelling" but instead requires that any sentence reduction be consistent with the applicable policy statements of the United States Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A)(ii); 28 U.S.C. § 944(t) (directing the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction"). In United States v. McCoy, however, the Fourth Circuit observed that "[t]here is as of now no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended 18 U.S.C. § 3582(c)(1)(A), and as a result, district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" 981 F.3d at 284 (quoting United States v. Zullo, 976 F.3d 228, 230 (2nd Cir. 2020))(emphasis in original).

A desire to care for aging parents, without more, does not constitute an extraordinary or compelling reason for a compassionate release. United States v. Goldberg, 2020 WL 1853298, at *4 (D.D.C. Apr. 13, 2020). After all, "[m]any, if not all, inmates have aging and sick parents." United States v. Ingram, 2019

3

WL 3162305, at *2 (S.D. Ohio July 16, 2019). Rather, an inmate must demonstrate that he or she is the only possible caregiver for an incapacitated parent. United States v. Allen, 2021 WL 3025458, at *3 (W.D. Va. July 16, 2021) (citing United States v. Bucci, 409 F.Supp. 3d. 1,2 (D. Mass. 2019)). Specifically, the family member must be "completely unable to care for himself or herself". United States v. Lisi, 440 F. Supp 3d 246 (S.D.N.Y. 2020).

**B. Analysis**

    **1. Administrative Exhaustion**

A defendant who moves for compassionate release must exhaust her remedies with her warden and the BOP before filing a motion for compassionate release. McCoy, 981 F.3d at 283. On July 28, 2020, Gomez submitted her administrative request for compassionate release to the warden of FCI Aliceville (Dkt. No. 345-1). The warden received her request on August 4, 2020, and denied it on August 17, 2020. Id. Gomez did not appeal this denial to the BOP and instead filed her motion for compassionate release on October 16, 2020 (Dkt. No. 344).

18 U.S.C. § 3582(c)(1) requires "exhaustion of all administrative rights *or* the lapse of 30 days from the warden's receipt of the inmate's request for compassionate release, whichever is earlier". United States v. Thompson, 458 F. Supp. 3d

4

**USA V. GOMEZ**                                                                                     **1:17CR71-1**

**MEMORANDUM OPINION AND ORDER DENYING**
**MOTIONS FOR COMPASSIONATE RELEASE [DKT. NOS. 344, 345]**

482, 485 (S.D. W. Va. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)) (emphasis in original). If a request for compassionate release is denied by a warden within 30 days of receipt, the inmate must appeal that denial to the BOP. See United States v. Komorski, 467 F. Supp.3d 227, 232 (M.D. Pa. June 17, 2020) ("[C]ases indicate that this statutory exhaustion requirement has been interpreted to excuse full exhaustion of administrative remedies only if 30 days have elapsed without any response from the Bureau of Prison's to the inmate's request.") (citation omitted); see also United States v. Whisenant, 2021 WL 392728, at *2 (D. Kan. Feb. 4, 2021) ("if the warden responds to a request within 30 days, defendant must fully exhaust available administrative appeals before filing a motion in district court.") (citation omitted).

Gomez has not satisfied the administrative exhaustion requirement of § 3582(c)(1)(A) because she did not appeal the timely denial by the warden. However, even were Gomez's motions not barred by her failure to exhaust her administrative remedies, the reasons she asserts, taken in combination with the sentencing factors, do not justify compassionate release at this time.

    **2.**    **Extraordinary and Compelling Reasons**

Gomez seeks compassionate release in order to assist her mother during the COVID-19 pandemic, but fails to demonstrate any

**USA V. GOMEZ** 1:17CR71-1

**MEMORANDUM OPINION AND ORDER DENYING**
**MOTIONS FOR COMPASSIONATE RELEASE [DKT. NOS. 344, 345]**

extraordinary and compelling reason for the Court to release her to home confinement. Gomez contends she is the sole caregiver for her mother, who she claims has been incapacitated during the pandemic due to her health history of skin cancer and lack of family support (Dkt. No. 345). Gomez alleges that her mother's history of cancer puts her at greater risk for developing a serious illness from the COVID-19 virus and contends that her mother's reliance on public transportation enhances her risk of exposure. Id.

The Government argues that Gomez has failed to sufficiently demonstrate that her mother's skin cancer makes her unable to care for herself (Dkt. No. 351). It also contends Gomez has failed to show her mother's skin cancer diagnosis increases her risk for contracting a serious illness from the COVID-19 virus. Id. The Government further asserts that Gomez has not established she could provide transportation for her mother as an alternative to public transportation. Id.

According to the Centers for Disease Control and Prevention ("CDC"), a cancer patient may be more likely to become severely ill from COVID-19 because certain cancer treatments may weaken the body's immune response.[1] Notably, although Gomez's mother was

---

[1] CDC, COVID-19: People with Certain Medical Conditions, (May 13, 2021)

**USA V. GOMEZ** 1:17CR71-1

**MEMORANDUM OPINION AND ORDER DENYING**
**MOTIONS FOR COMPASSIONATE RELEASE [DKT. NOS. 344, 345]**

diagnosed with skin cancer in 2016 and 2019, according to her medical records, her plan of care is "medical surveillance following completed treatment" (Dkt. No. 345-2 at 4). Importantly, her records do not indicate that she is undergoing any active course of chemotherapy or other immune-suppressing treatment (Dkt. No. 345-2).[2] Further, her records do not discuss any impact to her ability to care for herself. Therefore, Gomez has not demonstrated that her mother is incapacitated or even at greater risk for contracting COVID-19 based on her past cancer diagnosis.

Second, although Gomez's contention that she is the sole caregiver for her mother is colorable, she has not established that, if released early, she could help transport her mother to her doctor's appointments without using public transportation. At the time of her sentencing, her mother resided with Gomez's father; however, the two have since separated and are no longer associated

---

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Aug. 4, 2021).

[2] The National Institutes of Health advises that clinical outcomes of COVID-19 are generally worse in people who are being treated for cancer, citing recent studies suggesting that patients undergoing chemotherapy have a higher case-fatality rate than the general population. NIH, COVID-19 Treatment Guidelines: Special Considerations in Adults and Children with Cancer, (Aug. 4, 2021) https://www.covid19treatmentguidelines.nih.gov/special-populations/cancer/ (last accessed Aug. 4, 2021).

**USA V. GOMEZ**                                                                      **1:17CR71-1**

**MEMORANDUM OPINION AND ORDER DENYING**
**MOTIONS FOR COMPASSIONATE RELEASE [DKT. NOS. 344, 345]**

(Dkt. No. 345 at 5). Gomez also explains that her mother has no other children or family residing in the United States. Id. According to Gomez, her mother relies on public transportation because she never obtained her driver's license, is unable to afford private transportation, and does not have family support. Id. She further contends that her mother's frequent public transportation use puts her at a greater risk for exposure to the COVID-19 virus and, if Gomez is not there to assist, her mother could face life-threatening consequences. Id.

    Although using public transportation may potentially increase her mother's risk of contracting COVID-19 through community spread, Gomez fails to demonstrate how her requested release to home confinement would improve her mother's situation. Specifically, Gomez does not indicate whether she has a driver's license or access to a personally owned vehicle in order to provide a safer form of transportation to her mother. Her assertions also support the fact that her mother completes daily tasks without assistance, such as utilizing public transportation, and is therefore not incapacitated.

    Although Gomez may be her mother's sole caretaker, she has not provided any documentation suggesting her mother is unable to care

**USA V. GOMEZ** 1:17CR71-1

**MEMORANDUM OPINION AND ORDER DENYING**
**MOTIONS FOR COMPASSIONATE RELEASE [DKT. NOS. 344, 345]**

for herself. Thus, Gomez has failed to establish any extraordinary or compelling reasons for compassionate release.

### 3. Sentencing Factors

Even if Gomez could establish extraordinary and compelling reasons for a sentence reduction, the Court must consider the § 3553(a) factors to determine whether a sentence reduction is appropriate. United States v. Raia, 954 F.3d 594 (3d Cir. 2020); United States v. Williams, 1:13-CR-370-4, 2020 WL 5097490, at *3 (M.D.N.C. Aug. 28, 2020). Any decision to release an inmate early pursuant to § 3582(c)(1)(A)(i) must be consistent with the relevant sentencing factors requiring the Court to impose a sentence "sufficient, but not greater than necessary". 18 U.S.C. § 3553(a). The relevant considerations under § 3553(a) include 1) the nature and circumstances of the offense, 2) the defendant's history and characteristics, and 3) whether the sentence imposed reflects the seriousness of the offense, promotes respect for the law, deters criminal conduct, and protects the public from future crime. Id.

In this vein, it is necessary to carefully weigh Gomez's history in this case. While on unsupervised probation for a conviction related to access device fraud, Gomez used black-market skimming devices in West Virginia to obtain credit card information from card readers on gas station pumps (Dkt. No. 231 at 11). She

9

**USA V. GOMEZ**                                                    **1:17CR71-1**

**MEMORANDUM OPINION AND ORDER DENYING**
**MOTIONS FOR COMPASSIONATE RELEASE [DKT. NOS. 344, 345]**

then made purchases and cash withdrawals with the "cloned" credit cards created with this information. Id. Gomez traveled from Florida over a period of two months in 2017 to conduct the skimming scheme, and opened a bank account to deposit a portion of the scheme's proceeds, pay for various travel expenses, and withdraw money from the cloned cards. Id. at 12. In addition to her sentence of incarceration, she was ordered to pay over $61,000 in restitution (Dkt. No. 257).

Gomez argues that her fraudulent activity was directly related to her cocaine addiction and her struggle with poverty (Dkt. No. 345). Further, while acknowledging its serious nature, she contends this offense does not indicate that she is violent or dangerous. Id. Gomez also argues that she has been sober while incarcerated and will not pose a danger to the community if she receives appropriate substance abuse treatment and supervision. Id.

In its response, the Government contends that Gomez's conduct required "a certain sophistication with careful planning and execution" (Dkt. No. 351 at 7). Although her conduct was not violent, the Government notes that the Court considered the harm to the community, preying on "unaware victims while they were simply filling up their gas tanks," significant enough to warrant a severe sentence. Id.

10

**USA V. GOMEZ**                                                                                        **1:17CR71-1**

### MEMORANDUM OPINION AND ORDER DENYING
### MOTIONS FOR COMPASSIONATE RELEASE [DKT. NOS. 344, 345]

Notably, although this is Gomez's first significant sentence of incarceration, she has engaged in fraudulent conduct before. In June 2016, she pleaded guilty to criminal possession of a forged instrument in the third degree and was sentenced by a state circuit court in Lexington, Kentucky to six months of jail, suspended, and two years of unsupervised probation. Id. Regarding that conviction, Gomez was found in possession of 22 counterfeit credit cards and $3,000.00 worth of fraudulently-obtained merchandise. Id.

Unfortunately, Gomez's repeated fraudulent conduct poses a serious risk to the community. Although she contends her fraudulent conduct was directly related to her substance abuse, she does not argue that she participated in a substance abuse treatment program while incarcerated. Instead, her second conviction for fraudulent activity underscores her risk of recidivating upon release.

Moreover, although Gomez claims her struggle with poverty is a root cause of her criminal conduct, it appears her unauthorized purchases were not limited to basic necessities, with the intended loss calculated as at least $1,000,000.00 (Dkt. No. 231 at 22). Indeed, the products of the transactions with the cloned credit cards were "predominantly money orders and gift cards." Id. at 11.

**USA V. GOMEZ** 1:17CR71-1

**MEMORANDUM OPINION AND ORDER DENYING
MOTIONS FOR COMPASSIONATE RELEASE [DKT. NOS. 344, 345]**

In sum, Gomez's history and characteristics and risk of recidivism, when combined with the need to promote respect for the law and adequately punish her, argues against a sentence reduction.

### III. CONCLUSION

Because a sentence reduction would be inconsistent with the § 3553(a) factors, and for the other reasons discussed, the Court **DENIES** Gomez's motions for compassionate release **WITHOUT PREJUDICE** (Dkt. No. 344, 345).

The Clerk **SHALL** transmit copies of this Order to counsel of record and all appropriate agencies.

DATED: August 13, 2021.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE